GLENN *v.* ADAMS.

PATENTS; INTERFERENCES.

1. Where in an interference case, there are concurrent findings by all of the tribunals of the Patent Office in respect to mere matters of fact about which the testimony is conflicting, this court will not reverse those findings unless it be shown clearly and beyond reasonable doubt that there has been error committed in comparing and weighing the evidence.

2. The facts in such a case, involving the priority of invention of a

drilling cable comprising a wire section and a rope section spliced together, considered, and the decision of the Commissioner of Patents *affirmed.*

Patent Appeals. No. 77. Submitted November 10, 1897. Decided February 8, 1898.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Dodge & Sons* for the appellants.

*Messrs. Kay & Totten* for the appellees.

Mr.· Chief Justice ALVEY delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents in an interference proceeding in the Patent Office instituted and declared between the joint application of Harvey S. Glenn and Coulter E. Glenn and a pending application of Samuel Adams for the same or a similar invention. The application of the Glenns was filed on the 22d of March, 1895, and that of Adams was filed on the 11th of February, 1895. · The subject-matter of the invention is a supposed new and useful improvement in the mode of constructing cables, ropes, etc., used for drilling oil, gas, and water wells, and for all other drilling purposes, etc. The issue declared is as follows:

"As an improved article of manufacture, a drilling cable comprising a wire section and a rope section spliced together."

The structure of the article of the alleged invention would seem to be very simple, though its improvement and utility may be very considerable. The object of the splicing is to secure elastic and springing action in the use of the cable, which is not obtainable from an entire wire cable.

Under the preliminary statements of the parties, a considerable volume of testimony was taken, and the whole con-

troversy resolves itself into a few facts, and the testimony in regard to which is exceedingly conflicting. Indeed, the question involved mainly depends upon the credibility of the parties and their witnesses.

Adams alleges in his preliminary statement that he conceived the invention about December 1, 1887, and that he disclosed it to others about December 1887, or January, 1888; that he made a drawing of it about December, 1887, and at different times since; that he made experimental tests in drilling with the spliced or combined rope about January, 1888, and at different times since, and that he found by such experiments that the invention was practicable; that in the summer of 1894 he gave permission for the use of the combined cable in controversy in the drilling of a well in which the Glenns were employed, and that the invention was, during the progress of the work in drilling of that well, disclosed to the Glenns, and the use of the invention proved to be successful.

In the preliminary statement by the Glenns, they allege that they conceived the invention involved in the issue on or about the 18th of October, 1894, and that they communicated such invention to one or more persons on or about the same date, and that Samuel Adams was one of such persons; that the invention was embodied in a full-sized operative form on or about the 25th of October, 1894, and practically operated at that time; that the device has been in public use from October 25, 1894, and on sale since November, 1894; that drawings or sketches were made in November, 1894.

These respective preliminary statements were sworn to by the parties, and the facts stated therein were substantially testified to by the respective parties when they were examined as witnesses.

The case was carefully considered, and the conflicting evidence compared by the examiner of interferences, and he awarded priority to Adams. An appeal was taken by

12 Ct. App.—13

the Glenns to the Board of Examiners in Chief, and that tribunal, upon going over the evidence carefully, affirmed the judgment of the examiner of interferences; and from the latter ruling an appeal was taken to the Commissioner in person, and he affirmed the previous findings and conclusions.

After these several concurrent findings in the Patent Office in respect to a mere matter of fact, about which the testimony is conflicting, there could be no reasonable ground to suppose that this court would reverse those findings unless it be shown clearly and beyond reasonable doubt that there had been error committed in comparing and weighing the evidence.

We have examined all the testimony with great care— that given by the parties themselves, as well as that given by the disinterested witnesses—and we cannot perceive how the officials of the Patent Office could, upon any fair construction of the evidence, have made their findings different from those they have made. If we allow that the circumstantial and apparent candid history of the conception, and the practical experiments made of it, as furnished in the testimony of Adams, is fairly countervailed by that furnished in the testimony of the Glenns, yet the other witnesses in the case, to say nothing of the onus of proof, would seem to make it clear beyond reasonable doubt that Adams was the first to conceive and to make disclosure to others, and was first to make practical experiments of the invention, or, rather, illustrations of it. It is clear, also, that the conception of the invention was disclosed to the Glenns by Nevin, by authority of Adams; and while the Glenns were the first to apply the invention or device in the actual operation of drilling an oil well, yet they did so upon the suggestion and urgent request of Nevin, and rather against their own judgment as to the practical working of what was to them, at the time, a doubtful invention of anything useful.

It being made clear by the evidence in the case that the

conception of the invention was that of Adams, and that he made full disclosure thereof, and that among those to whom disclosure was made was Nevin, who disclosed it to the Glenns, who had not known of the invention before, it would seem to be but a reasonable conclusion that the application of the invention or device in the drilling of the well, upon the suggestion of Nevin, should in reason and justice, inure to the benefit of Adams, as a reduction to practice of his invention. It is immaterial, as said by the examiner of interferences, that the cable was made without any instruction or supervision by either Adams or Nevin. The suggestion or request of Nevin that the cable should be made and used, was a sufficient disclosure of the invention, and, as said by the examiner, "the splicing of wire cables and of manilla cables is old and well known, and and any skilled workman could, it is believed, readily splice a wire cable to a manilla cable without being instructed as to the the manner of doing so, as the mere suggestion would be sufficient for him, and he would exercise no inventive faculty in carrying out the suggestion."

Therefore, Adams being the first to conceive, the first to disclose, the first to reduce to practice and the first to apply to the office for a patent, he is entitled to priority on the present issue.

We must therefore order and direct that the proceedings in this case and this decision be certified to the Commissioner of Patents, to be entered of record in the Patent Office, as directed by law; and it is so ordered.

*Rulings affirmed.*